UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
RONALD GIALLANZO,                  :
                                   :
                   Petitioner, :      21 CV 4282 (DLI)
                                   :      (17 CR 155 (DLI))
          - against -              :
                                   :
                                   :
UNITED STATES OF AMERICA,          :
                                   :
                   Respondent. :
-------------------------------X


          MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S
          MOTION TO VACATE CONVICTION UNDER 28 U.S.C. § 2255

                     **Preliminary Statement**

     This memorandum of law is submitted in support of Petitioner
RONALD GIALLANZO's motion to vacate his conviction pursuant to 28
U.S.C. § 2255.  Mr. Giallanzo is serving a sentence of 144-months'
imprisonment with respect to a single count of racketeering
conspiracy in violation of 18 U.S.C. § 1962(c) and 1963, and a
consecutive sentence of 24-months' imprisonment with respect to a
single count of violation of supervised release, pursuant to an
August 15, 2018, judgment of conviction.  This followed a plea of
guilty on March 19, 2018, pursuant to a plea agreement.

     The plea agreement included a stipulated Sentencing Guidelines
range of 70-87 months, and an agreement by Mr. Giallanzo to admit
guilt to participating in a racketeering conspiracy including
several Racketeering Acts involving extortionate extension and

collection of credit.  Additionally, Mr. Giallanzo agreed to sell his primary home in which his wife and four children lived—which required that his wife participate in the plea process—and to forfeit $1,350,000.00.  For its part, the Government agreed to recommend a sentence within the advisory Guidelines range and not seek an upward departure under the Sentencing Guidelines based upon the offense conduct or any other information known to the government at the time of the agreement.  (Exhibit A; Plea Agreement at 8)

At the sentencing proceeding, defense counsel waived the right to a Fatico hearing as to several uncharged acts raised in the presentence report, to which Mr. Giallanzo had timely objected. Following aggressive argument by the Government, the Court sentenced Mr. Giallanzo as indicated above, well above the stipulated Sentencing Guidelines in the plea agreement.

Following sentencing, Mr. Giallanzo timely appealed, raising several issues related to the sentence.  Of particular importance in connection to this Petition, Mr. Giallanzo argued on appeal that the government breached the plea agreement, which prohibited it from making a motion for an upward departure under the Sentencing Guidelines, when it repeatedly advocated for the District Court to consider "other crimes" and prejudicial information.

By Summary Order of May 4, 2020, the United States Court of Appeals for the Second Circuit affirmed the judgment of conviction. Significantly, with respect to the argument that the Government had

breached the plea agreement, the Court of Appeals took note of the fact that there had been no defense objection at the time of sentencing, and stated "we therefore review only for plain error." (Exhibit B; Summary Order at 5.)   In light of the high barrier established under plain error review, the Court of Appeals concluded that "[u]nder this standard, we cannot say that the government breached Giallanzo's plea agreement[; t]he record demonstrates that the government's advocacy at sentencing, while strident, was made in support of a sentence at the top of the Guidelines range, as permitted under the plea agreement."  (Exhibit B; Summary Order at 5.)

This Petition followed.

**Argument**

POINT I

PETITIONER WAS DEPRIVED OF HIS RIGHTS TO DUE PROCESS AND
EFFECTIVE ASSISTANCE OF COUNSEL WHEN HE WAS PROMISED BY
THE GOVERNMENT THAT HE WOULD REMAIN IN THE NEW YORK REGION
WHILE SERVING HIS SENTENCE, AND WAS TOLD BY COUNSEL THAT HE
WOULD NOT BE SENTENCED ABOVE THE STIPULATED GUIDELINES
RANGE BECAUSE OF HIS PLEA AGREEMENT, AND HE RELIED ON
THOSE REPRESENTATIONS IN DECIDING TO PLEAD GUILTY, WHEN
HE OTHERWISE WOULD HAVE GONE TO TRIAL.

In a highly unorthodox and problematic set of circumstances,
after Mr. Giallanzo had refused to plead guilty to the terms of a
proffered plea agreement at an appearance before this Court, a
prosecutor and an agent went to the holding cell in the courthouse,
and in the presence of defense counsel, implored Mr. Giallanzo to
accept the plea offer, telling him that he did not understand how
hard his attorney had worked to get the deal for him.  When Mr.
Giallanzo, who had always made clear that remaining the New York
area was of paramount importance, informed the prosecutor that he
would go to trial unless he received an assurance that he would
serve his sentence within the local area, the prosecutor told him
that "if you take the plea, I'll keep you in the region."

Additionally, when Mr. Giallanzo expressed his concerns to his
attorney that he could still receive an above-guidelines sentence
from the Court, and that he was aware of two individuals to whom
that had happened, his attorney told him that it would not happen
in his case because his case was different from theirs and his plea

4

agreement would protect him from that.  Relying on those promises, Mr. Giallanzo entered a plea of guilty shortly thereafter.  Contrary to his attorney's promise, he did receive a sentence above the stipulated Sentencing Guidelines range, and contrary to the prosecutor's assurance, he was not designated to serve his sentence in the local region.  His reliance on these representations—both of which were plainly meant to induce him to give up his right to trial and enter a plea of guilty—and the Government's failure to live up to it—rendered the plea involuntary, and violated Mr. Giallanzo's rights to due process and effective assistance of counsel. Accordingly, the judgment of conviction and guilty plea must be vacated.

The Relevant Law

To comport with principles of constitutional due process, a guilty plea must be entered knowingly and voluntarily. Boykin v. Alabama, 395 U.S. 238, 242 (1969); Wilson v. McGinnis, 413 F.3d 196, 199 (2d Cir. 2005).  "A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."  Machibroda v. United States, 368 U.S. 487, 493 (1962).  A guilty plea is not voluntary and cannot stand if "induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper

5

relationship to the prosecutor's business (e.g. bribes)." Brady v. United States, 397 U.S. 742, 755 (1970); United States v. Doe, 537 F.3d 204, 211 (2d Cir. 2008).

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971); see also United States v. Feldman, 939 F.3d 182, 189–90 (2d Cir. 2019) (remanding for hearing with respect to Government's representations in plea negotiations).  If the Government fails to meet its obligations, "the defendant is entitled to seek a remedy, which might in some cases be rescission of the agreement, allowing him to take back the consideration he has furnished, i.e., to withdraw his plea." Puckett v. United States, 556 U.S. 129, 137–38 (2009).

Under the familiar two-pronged rule of Strickland v. Washington, 466 U.S. 668 (1984), for a defendant to prevail on a claim that he was deprived of his federal constitutional right to effective assistance of counsel, he must demonstrate 1) that counsel's representation "fell below an objective standard of reasonableness" in light of the "prevailing professional norms," and 2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 688, 694; Wilson v. Mazzuca, 570 F.3d 490, 504-

05, 507 (2d Cir. 2009) (reversing denial of habeas relief where trial counsel's legal errors and trial decisions led to prejudice).

Errors satisfying the performance prong on the Strickland test include "omissions [that] cannot be explained convincingly as resulting from sound trial strategy." Wilson v. Mazzuca, 570 F.3d at 502, quoting Eze v. Senkowski, 321 F.3d 110, 112 (2002) (vacating denial of habeas petition where defense counsel's omissions had no legitimate strategic basis). While it may be true that Strickland recognizes "the wide latitude counsel must have in making tactical decisions," 466 U.S. at 689, courts must be careful to avoid characterizing inexplicable errors as "strategic" trial decisions. See Pavel v. Hollins, 261 F.3d 210, 218 (2d Cir. 2001) (describing "strategic" decision as "conscious, reasonably informed decision made by an attorney with an eye to benefitting his client"); United States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998) (strategic decision must encompass "tactical justification for the course" chosen by trial counsel); Wilson v. Mazzuca, 570 F.3d at 505 (unreasonable mistaken belief not strategic decision insulating error under Strickland review).

Claims of ineffective assistance of counsel in relation to a guilty plea are also governed by the standard set forth in Strickland. See Hill v. Lockhart, 474 U.S. 52, 58 (1985). To satisfy the prejudice prong in the context of a guilty plea, "the defendant must prove that 'there is a reasonable probability that,

but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" United States v. Gunn, 419 F. App'x 106, 109 (2d Cir. 2011) (quoting Hill, 474 U.S. at 59).

Unsurprisingly, courts addressing whether counsel's performance fell within acceptable standards in the context of guilty pleas have emphasized the central role of correct legal advice in counseling a defendant whether to plead guilty. See United States v. Gordon, 156 F.3d 376, 380 (2d Cir. 1998) (vacating plea where counsel's legal assistance "'fell below the prevailing professional norms' in erroneously advising a client during plea negotiations of his maximum exposure to imprisonment at sentencing"); Finch v. Vaughn, 67 F.3d 909, 916 (11th Cir. 1995) ("[f]or a guilty plea to represent an informed choice so that it is constitutionally knowing and voluntary, the counsel must be familiar with the facts and the law in order to advise the defendant of the options available") (emphasis added) (citations and internal quotes omitted).

In determining whether representation with respect to a plea constitutes ineffective assistance of counsel, the Second Circuit has distinguished between "mistaken predictions" and "erroneous legal advice about the ultimately knowable." United States v. Arteca, 411 F.3d at 321 ("factual misinformation of the kind at issue in Hill, to the extent that it renders the decision to plead guilty less than voluntary or intelligent, may provide the basis for

withdrawing a plea), <u>citing</u> <u>United States ex rel Hill v. Ternullo</u>, 510 F.2d 844, 847 (2d Cir. 1975).

<u>The Application of The Law To The Facts Here</u>

Although, as is the case in many prosecutions, Mr. Giallanzo authorized his attorney to explore the possibility of resolution of the trial through a negotiated guilty plea, the facts here demonstrate that such a resolution was far from a sure thing, and in fact there was every indication that Mr. Giallanzo was prepared to go to trial in the case.  In addition to his own unequivocal statements that "I had confidence in my defense, since it was evident that the charges were based on the accounts of unreliable cooperating witnesses and would go to trial if there was no acceptable plea offer," (Exhibit C at ¶ 3), Mr. Giallanzo's wife, Elizabeth—with whom he regularly spoke about whether to plead guilty or go to trial— also states that Mr. Giallanzo was "ready and willing to go to trial," that he told her not to attend a scheduled court appearance because he "did not intend to plead guilty," and that "I understood that he intended to go to trial."  (Exhibit D at ¶ 3)  Both Mr. Giallanzo and his wife emphasized that it was a very high priority for him to stay in the New York area, and that if he could not be assured of that, he would be willing to go to trial.  Indeed, as Mr. Giallanzo—who had been married for 27 years and had four children— states in his Declaration, although he had confidence in his chances

if he were to go to trial, he only authorized his attorney to explore the possibility of a negotiated plea because it was "important to me that I not be separated from my family for a long time." (Exhibit C at ¶ 3)  He also made clear that he did not want to accept a plea deal if he could still be sentenced to an above-guidelines sentence, and that he was very concerned about this possibility because his uncle, who had been represented by the same defense counsel, and another individual he knew, had recently been given above-guidelines sentences after entering plea agreements. (Exhibit C at ¶ 5)  In response, his attorney told him that his case was different from those defendants and that the proposed plea agreement in his case would protect him from that occurring. (Exhibit C at ¶ 5)

In addition to the statements of Mr. Giallanzo and his wife, there is considerable other proof that he intended to go to trial in this case.  Attorney Joseph DiBenedetto, who was heavily involved in the case throughout its pendency as counsel for co-defendant Nicholas Festa, states that he was present at co-defendant meetings with Mr. Giallanzo at which "Mr. Giallanzo expressed his interest in going to trial." (Exhibit E)  That this was no mere posturing is further supported by the fact that, on at least two occasions during the pendency of the case, Mr. Giallanzo met with attorney Gerald McMahon, specifically for the purpose of having Mr. McMahon represent him at trial. (Exhibit F at ¶ 2)  Indeed, Mr. McMahon noted that he met with Mr. Giallanzo many months after the first

meeting and that Mr. Giallanzo repeated to him that he wished to go to trial in the case.  (Exhibit F at ¶ 4)  Shortly thereafter, Mr. McMahon learned that Mr. Giallanzo had accepted a plea deal and therefore would not be going to trial.  (Exhibit F at ¶ 5)  This indicates that going to trial was still a serious option for Mr. Giallanzo in the general time frame when he agreed to plead guilty.

Finally, the circumstances surrounding the March 8, 2018, court appearance further show that at that time, even as the case had initially been put on the calendar for what appeared to be a plea proceeding, Mr. Giallanzo was not in fact willing to plead guilty, and the matter had to be rescheduled.  (Dkt. Entry, 3/8/18)  And, as noted above, since Mr. Giallanzo had advised his wife the day before the appearance that she did not have to come to court, it is clear that he had no intention of entering a plea that day.

In this context, it is difficult to imagine any other explanation for the events following the court appearance than that the prosecution—having unsuccessfully tried to convince Mr. Giallanzo to accept a plea offer by emphasizing how hard his attorney had worked—then sought to convince him by assuring him of the thing that was most important to him:  that he would remain in the region close to his family.  Thus it was obvious that the prosecution was highly motivated to see the plea deal completed, and to avoid going to trial on the case.  But in light of Mr. Giallanzo's well-established position that he would only accept a plea if he could

remain local, it can hardly come as a surprise that he would have held out for that condition, even when under the prosecution's full-court-press approach following the hearing.

Additionally, in light of his personal knowledge and connection to two people who had been sentenced above the stipulated guidelines range, it would have been equally important to him to receive an assurance that it would not happen if he accepted a plea deal and gave up his right to trial. Since Mr. Giallanzo did plead guilty within days after the meeting, and informed his wife shortly after the meeting that he would plead guilty after receiving the promises, logic and common sense dictate that Mr. Giallanzo did in fact rely on the those representation in deciding to give up his right to a jury trial and instead to plead guilty.

Plainly, Mr. Giallanzo did not remain in the New York area, but was moved nearly 500 miles and a 10-hour drive away from his family. (Exhibit C)  Even more problematically, of course, the Government did not have the power to ensure that Mr. Giallanzo remain in the region, since designation decisions are solely within the discretion of the Bureau of Prisons. See United States v. Williams, 65 F.3d 301, 307 (2d Cir. 1995) ("sentencing court has no authority to order that a convicted defendant be confined in a particular facility, …; those decisions are within the sole discretion of the Bureau of Prisons"); 18 U.S.C. § 3621(b). However, the swift decision to plead guilty after having been approached in the holding cell shows

that Mr. Giallanzo believed that the prosecution had the power to keep him in the Region, and would do so.

Likewise, defense counsel's statement that Mr. Giallanzo's case was different from the case in which two people he knew, and that "the proposed plea agreement in my case would protect me from that occurring" was plainly incorrect legal advice, since this was not a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(b) in which the court was bound to sentence the defendant within the stipulated range if the court accepted the plea. And the circumstances here show that Mr. Giallanzo would have insisted on going to trial had he been correctly advised that he could be sentenced above the stipulated sentencing guidelines.

Accordingly, since he relied on those representations in deciding to plead guilty, and there is considerable evidence that he would have gone to trial otherwise, the plea was not truly voluntary, and the plea of guilty must be vacated.

POINT II

PETITIONER WAS DEPRIVED OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY WAIVED A FATICO HEARING REGARDING PREVIOUSLY OBJECTED TO UNCHARGED CONDUCT, WHICH CONDUCT WAS RELIED ON BY BOTH THE PROSECUTION AND THE COURT AT SENTENCING, AND PETITIONER RECEIVED AN ABOVE GUIDELINES SENTENCE BASED IN PART ON THOSE ALLEGATIONS.

In the presentence report, the Probation Department alleged in paragraph 23 that:

> On one occasion, Giallanzo was stopped by a police officer on his way to meet with his pre-trial services officer in Brooklyn. Giallanzo had a firearm in the back center-seat console of his Mercedes Benz. Giallanzo attempted to avoid receiving a ticket by presenting a Police Benevolent Association ("PBA") card to the officer. Although-this did not work and Giallanzo was ticketed, the officer did not discover the firearm in the back seat. (PSR at ¶ 23)

The presentence report also contained an allegation that Mr. Giallanzo had committed several acts of arson, (PSR at ¶¶ 20, 41-42, 95-96, 233, and 234), as well as several instances of extortion and extortionate loans. (PSR at ¶¶ 31, 32, 58-59, 85, 91, and 184-90)   Mr. Giallanzo requested that his attorney file objections to those and several other allegations in the presentence report. Although defense counsel did follow up with a June 4, 2018, letter to Probation stating the objections, the presentence report did not adopt any of the objections, and instead adhered to the versions of events provided by the Government.   (Exhibit G)

At the time of sentencing, the Court expressly made reference to the allegations that Mr. Giallanzo had a firearm in the console

14

of his vehicle and that he had committed arson, and identified them as allegations that Mr. Giallanzo denied.  (Exhibit H; Sentencing Tr. at 12, 16)  The Court noted that Mr. Giallanzo had the right to a Fatico hearing, and advised that:

> This is all about relevant conduct about racketeering activity that the Court can take into consideration. And either the Government is put to the test on it, if the defendant persists in objection, which is his right. It is his right to do. But if he persists in doing that, then we need to have a hearing because otherwise I do not feel comfortable with it sitting in the pre-sentence report when the defendant is objecting. I have to resolve that objection.  (Exhibit H; Sentencing Tr. at 17; emphasis added.)

The Court further advised counsel of the following:

> Probation took the position, which I think is correct, that there was still an expressed or implied threat to John Doe No. 19, which is reasonably foreseeable to the defendant given the nature of loansharking and the extortionate collection.  So even though he may not have made the threat and even though he may not have been present when the threat was made, if it was made by somebody else, it is certainly reasonably foreseeable that such a threat could be made. I thought Probation explained it rather well.

> I think that was it with respect to those paragraphs that were in your letter of June 4th. If you want to take a couple of minutes to discuss that with your client. And, yes, I would shut off the microphones.  (Exhibit H; Sentencing Tr. at 18-19)

During the break, Mr. Giallanzo maintained his position that the allegations were false, since the claims could be disproved by showing he had been in jail at the time of an alleged arson and because he was aware that his car was subject to routine search by my pretrial services officer, who asked about my car any time I

reported to her.   (Exhibit C at ¶ 6)   Therefore, and also because he still had concerns about the other defendants who had received above-guidelines sentences, he expressed his desire to go forward with a Fatico hearing.   (Exhibit C at ¶ 3)

However, his attorney stated to him that "the judge is basically telling you you're going to get a guidelines sentence."   (Exhibit C)   Mr. Giallanzo acquiesced to this advice, and his attorney told the Court that "I had the opportunity to confer with Mr. Giallanzo and to the extent that we have objected to issues that the Government claims it can prove by a preponderance of the evidence, we are now withdrawing those objections, specifically the ones we've noted on the record today."   (Exhibit H; Sentencing Tr. at 19)

In its sentencing argument urging the Court to impose very serious punishment, the prosecutor seized on those allegations, stating that "[h]e's blatantly violated the terms of his supervised release by committing crimes virtually every day while he was under the Court's supervision," (Exhibit H; Sentencing Tr. at 25), and that "[h]e burned a car – he ordered the burning of a car of somebody he suspected of cooperating," and "[h]e had a gun while under supervised release." (Exhibit H; Sentencing Tr. at 26)

It is difficult to avoid the conclusion that the Government's advocacy, including its reliance on the uncharged conduct alleged in the presentence report, influenced the Court's ultimate decision

to impose a variance of 144 months, with a consecutive 24-month term.

Ineffective Assistance of Counsel
With Respect To A Fatico Hearing.

Prior to sentencing, a district court must "use the preponderance of the evidence standard to find facts relevant to sentencing for Guidelines calculation purposes." United States v. Salazar, 489 F.3d 555, 558 (2d Cir. 2007). A Fatico hearing ensures the defendant the "right to challenge the accuracy of the government's proffered facts regarding his participation in the sentencing-enhancing crime." United States v. Lee, 818 F.2d 1052, 1056 (2d Cir. 1987)).

An attorney's failure to seek a Fatico hearing when requested by the defendant can deprive the defendant of his right to effective assistance of counsel if there could be no sound strategic reason for the failure. See United States v. Santiago, 330 F. App'x 234, 239 (2d Cir. 2009); United States v. Lee, 818 F.2d at 1056. Where, a petitioner claiming ineffective assistance of counsel seeks an evidentiary hearing, the court should "determine[ ] whether, viewing the evidentiary proffers, where credible, and record in the light most favorable to the petitioner, the petitioner, who has the burden, may be able to establish at a hearing a prima facie case for relief," in which case a hearing should generally be held if material facts

Case 1:17-cr-00155-DLI   Document 578   Filed 10/15/21   Page 18 of 25 PageID #: 6768

are in dispute.  Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009).

Significantly, Mr. Giallanzo proffered specific objections to the allegations in the presentence report (Exhibit C at ¶ 6), and in his Declaration makes clear precisely how those allegations would have been disproved at a Fatico hearing, specifically that he was incarcerated at the time of some of the alleged conduct and that it would have defied credibility for him to have possessed a firearm in his car while in transit to see his pretrial services officer when he was well aware that his officer could search the car at any time.  In fact the officer had routinely inquired about the car at appointments.  (Exhibit C at ¶ 6)  These were specific claims relied on by the prosecutor in the Government's sentencing argument. Accordingly, the circumstances here differed markedly from those in cases where a Petitioner simply asserted in conclusory terms that he was hurt by not requesting a Fatico hearing, see, e.g., United States v. Costa, 423 F. App'x 5, 9 (2d Cir. 2011) ("in the absence of what evidence, if any, a Fatico hearing might have established, [the Court] "cannot conclude that counsel's failure to request one prejudiced [petitioner] in any way"), or that the Petitioner had "nothing to lose by holding the government to its burden of proof." United States v. Santiago, 330 F. App'x at 238-39.

Nor can counsel's rationale that "the judge is basically telling you you're going to get a guidelines sentence," and that

what happened to the other defendants who received above-guidelines sentences would not happen to Mr. Giallanzo remotely be explained as reasonable strategy under the circumstances. If anything, there was considerable basis for concern that an above-guidelines sentence was a very real possibility. First, in the presentence report, the Probation Department specifically advised the Court that the uncharged conduct "constitutes additional criminal activity for which the defendant is not held accountable in the advisory guideline calculations, and may warrant an upward departure." (PSR at ¶ 358). Even more significantly, the Court itself stated as plainly as could be that "[t]his is all about relevant conduct about racketeering activity that the Court can take into consideration," after having made reference to the arson and firearm allegations. (Exhibit H; Sentencing Tr. at 17)

Finally, the Government had aggressively argued in its lengthy written sentencing submission that "any leniency toward the defendant is unwarranted," and that "serious punishment" was warranted, and in making specific reference to the arson allegations. (Government Sentencing Mem. at 2, 7, 9, 16) There was every reason to believe that the Government would continue to take this aggressive position towards sentencing, including with respect to the uncharged conduct that would have been the subject of the Fatico hearing.

POINT III

PETITIONER WAS DEPRIVED OF HIS RIGHT TO EFFECTIVE
ASSISTANCE OF COUNSEL WHEN DEFENSE COUNSEL FAILED TO
OBJECT TO ADVOCACY DURING THE PROSECUTION'S SENTENCING
ARGUMENT THAT CONSTITUTED A BREACH OF THE PLEA AGREEMENT.

On direct appeal, Mr. Giallanzo argued that the Government had
breached the plea agreement by aggressively advocating—whether
expressly or implicitly—for a sentence above the stipulated
guidelines range of 87-97 months with respect to the racketeering
conspiracy count. Among the prosecutor's statements at sentencing
intended to cast Mr. Giallanzo in the most negative possible light
were:

- Everything indicates he's committed to a lifetime of crime (Exhibit H; Sentencing Tr. at 24);
- As Your Honor knows, he is so committed to crime, that even he continued his criminal activity from behind bars (Exhibit H; Sentencing Tr. at 25);
- He's willing to use anyone to continue on his path of amassing wealth from criminal activity (Exhibit H; Sentencing Tr. at 25);
- He blatantly violated the terms of his supervised release by committing crimes virtually every day while he was under the Court's supervision (Exhibit H; Sentencing Tr. at 25);
- There are numerous other loanshark victims out there. Arson victims out there. He burned a car--he ordered the burning of a car of somebody he suspected of cooperating (Exhibit H; Sentencing Tr. at 26);
- He had a gun while under supervised release. There is the fraud he committed with respect to the boat (Exhibit H; Sentencing Tr. at 27);
- He lied repeatedly to his probation officer while on supervised release (Exhibit H; Sentencing Tr. at 27);
- The employment that his PSR cites to was really ways that he was able to build his house while on Court supervision or run his loan-sharking operation (Exhibit H; Sentencing Tr. at 27);

> • There are people who have lost their homes. There are people who have lost thousands, hundreds of thousands of dollars, all at the hands of organized crime family members like the defendant (Exhibit H; Sentencing Tr. at 28).

Additionally, the Government argued that Judge Garaufis believed Mr. Giallanzo deserved a harsh punishment, specifically telling the Court that "Judge Garaufis so much as said that he got that sentence wrong" and "at one point Judge Garaufis even said, should I call Giallanzo back and redo the sentencing." (Exhibit H; Sentencing Tr. at 27)

These arguments, over-the-top as they were, were even more troubling when viewed in the context of the Government's approach in trying to convince Mr. Giallanzo to accept the plea offer—i.e., their claims that his attorney had done a great job to negotiate the deal for him, that he would make things easier for his co-defendants if he accepted the deal, and that if it was important to get him to agree, the prosecution would ensure that he would stay in the region. Having heard those representations from the prosecutor, Mr. Giallanzo was well within his rights to expect that the Government would honor the spirit of the agreement, rather than forcefully advocate against him at sentencing. But that is what happened.

The Relevant Law Regarding Prosecutorial Breach
of A Plea Agreement, And Its Application Here.

The Government's actions must comport with not only the agreement's letter, but also its "spirit." United States v.

21

Palladino, 347 F.3d 29, 30 (2d Cir. 2003); see also United States
v. Canada, 960 F.2d 263, 268-69 (1st Cir. 1992) (Government is not
permitted to implicitly repudiate the assurances it made when plea
bargaining, so as to pay "lip service" and make "end-runs around"
its promises); United States v. Thompson, 403 F.3d 1037, 1039 (8th
Cir. 2005) (finding that prosecution's acceptance of Probation's
certain recommendations out of "an obligation to advise the Court
of what the facts are" breached the plea agreement).

Notably, the prosecution cannot "rely on a general provision
of the plea agreement permitting it to comment on the facts of the
case to defeat the purpose of a specific provision" that otherwise
restricts its advocacy. United States v. Nolan-Cooper, 155 F.3d 221,
237 (3d Cir. 1998).

"Where the government's commentary reasonably appears to seek
to influence the court in a manner incompatible with the agreement,
[it] will not hesitate to find a breach, notwithstanding formal
language of disclaimer." United States v. Griffin, 510 F.3d 354, 361
(2d Cir. 2007) (citing United States v. Amico, 416 F.3d 163, 167 n.2
(2d Cir. 2005)). Thus, the government cannot claim as a defense
that it "did not intend to violate" an agreement's provision that
it not seek an above-Guidelines sentence where "in fact what was
said constituted an argument about where within the range to sentence
appellant and/or whether to upwardly depart." United States v.
Vaval, 404 F.3d 144, 153 (2d Cir. 2005).

While it is evident on its face that the arguments raised by the prosecutor against Mr. Giallanzo fell squarely within those prohibitions, the Court of Appeals noted that, since there had been no objection by defense counsel, it could only review the statements under the plain error standard.  (Exhibit B; Summary Order at 5.) Even while noting the stridency of the Government's advocacy, the Court of Appeals was obligated to conclude that "[u]nder [the plain error] standard, we cannot say that the government breached Giallanzo's plea agreement."  (Exhibit B; Summary Order at 5.)  Had there been an objection to the prosecutor's argument, in light of the Court of Appeals' qualifying remarks, there is every reason to believe that a different result would have been reached, and the Court of Appeals would have remanded for resentencing.  This is particularly so, since the Court of Appeals was never even given an opportunity to address the question of the Government's conduct and assurance in the holding cell with respect to inducing him to take the plea.

Where a claim of ineffective assistance of counsel is based on an attorney's failure to object, a reviewing court must focus on the merits of the underlying prosecutorial-misconduct claims.  See Wynters v. Poole, 464 F. Supp. 2d 167, 177 (W.D.N.Y. 2006) (granting petition where prosecutor's misconduct, and trial counsel's failure to address it, impermissibly impinged upon the fundamental fairness of Wynters' trial and resulted in constitutional prejudice), citing

Neill v. Gibson, 278 F.3d 1044, 1058 (10th Cir. 2001) ("to resolve these claims [that trial counsel failed to object to prosecutorial misconduct], therefore, we focus on the merits of the underlying prosecutorial-misconduct claims."); Hooks v. Ward, 184 F.3d 1206, 1221 (10th Cir. 1999) (same)).

Here, based on the terms of the plea agreement, Mr. Giallanzo reasonably expected that the Government would not repeatedly emphasize "other conduct" it specifically promised not to raise at the punishment stage, let alone do so in the stilted and, as the Court of Appeals recognized "strident" fashion it did in fact employ. And, respectfully, the 144 months plus 24 months consecutive sentence that the Court imposed leads to the conclusion that the advocacy had its intended effect.

Although counsel's stated view that "the judge is going to give you a guidelines sentence," was dubious at best at the time the sentencing proceeding commenced, such a view was untenable by the time the prosecutor was a minute into her sentencing argument. And it became more obvious with each passing minute that the Government was violating the spirit of the agreement in service of influencing the Court to impose an above-guidelines sentence, even while paying lip service to the terms of the plea agreement by framing it as an argument for a sentence at the top of the guidelines. By that point, there was no excuse—nor any imaginable strategic reason—for counsel not to object immediately, if not to prevent a further breach, then

at least to preserve the argument for appeal, where it is apparent that the Court of Appeals would have been receptive to the claim.[1]

## Conclusion

The petition should be granted, the judgment of conviction and plea vacated, or resentencing granted, or a hearing ordered.

Dated:     New York, New York
           October 15, 2021


                        Respectfully submitted,


                        ___/s/_____
                        Brendan White
                        WHITE & WHITE
                        524 East 20th Street, # 6D
                        New York, NY  10009
                        (646) 303-0267
                        brendan@whiwhi.com


                        Anthony DiPietro, Esq.
                        LAW OFFICES OF ANTHONY DIPIETRO,
                        P.C.
                        15 Chester Avenue
                        White Plains, New York 10601
                        914-948-3242

                        Attorneys for Petitioner
                         Ronald Giallanzo

---

[1]  It is worth noting that defense counsel also continued representation as co-counsel on direct appeal, where this issue was raised.