EDP:MS
F. #2021V01137

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                      Docket No. <u>21-CV-04282-DLI</u>
                                          (17-CR-00155-DLI-1)

RONALD GIALLANZO,

                  Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S SECTION 2255 PETITION

BREON PEACE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Margaret Schierberl
Assistant U.S. Attorney
    (Of Counsel)

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................. 1

I.      The Defendant's Offenses, Sentencing and Procedural Background ..................... 2

        A.      The Defendant's Prior Criminal Conduct ................................................... 2

        B.      The Defendant's Initial Violation of Supervised Release .......................... 2

        C.      The Defendant's Instant Offense ................................................................ 3

        D.      The Defendant's Guilty Plea ...................................................................... 4

        E.      The Defendant's Sentencing ...................................................................... 6

        F.      The Defendant's Appeal ........................................................................... 12

II.     The Defendant's Request for Relief Should Be Denied ....................................... 13

        A.      Applicable Law ......................................................................................... 13

                1.      Section 2255 .................................................................................. 13

                2.      Standard of Review for Ineffective Assistance Claims ................. 13

        B.      Argument ................................................................................................... 15

                1.      Defense Counsel's Conduct Was Reasonable and the Defendant
                        Suffered No Prejudice as a Result of the Negotiated Plea ............ 15

                2.      Defense Counsel's Strategic Decision To Decline To Pursue A
                        Fatico Hearing Was Reasonable .................................................... 17

                3.      Defense Counsel's Strategic Decision Not To Object At Sentencing
                        Was Reasonable ............................................................................. 18

                4.      The Defendant's Claim That His Plea Violates Due Process Is
                        Procedurally Barred and Meritless ................................................ 20

CONCLUSION .............................................................................................................. 22

## TABLE OF AUTHORITIES

Page(s)

**Cases**

Berry v. Ercole,
   391 F. App'x 87 (2d Cir. Aug. 30, 2010) ............................................................ 17

Bousley v. United States,
   523 U.S. 614 (1998) .......................................................................................... 13

Carneglia v. United States,
   No. 03-CV-6388, 2006 WL 148908 (E.D.N.Y. Jan. 18, 2006) ........................... 15

Cox v. United States,
   783 F.3d 145 (2d Cir. 2015) .............................................................................. 20

Cuevas v. Henderson,
   801 F.2d 586 (2d Cir. 1986) .............................................................................. 14

Curtis v. United States,
   No. 06-CR-00413 (DLI), 2021 WL 4340947 (E.D.N.Y. Sept. 23, 2021) ........... 20

DeJesus v. United States,
   161 F.3d 99 (2d Cir. 1998) ................................................................................ 13

Greiner v. Wells,
   417 F.3d 305 (2d Cir. 2005) .............................................................................. 18

Kercheval v. United States,
   274 U.S. 220 (1927) .......................................................................................... 21

Kimmelman v. Morrison,
   477 U.S. 365 (1986) .......................................................................................... 14

Oyague v. Artuz,
   393 F.3d 99, (2d Cir. 2004) ............................................................................... 21

Rajaratnam v. United States,
   736 Fed. App'x 279 (2d Cir. 2018) ................................................................... 20

Stinn v. United States,
   856 F. Supp. 2d 531 (E.D.N.Y. 2012) ............................................................... 13

Strickland v. Washington,
    466 U.S. 668 (1984) ............................................................................. 13, 14, 15, 17

Swerbilov v. United States,
    No. 04-CV-3320, 2005 WL 1177938 (E.D.N.Y. May 18, 2005) ...................................... 15

United States v. Aguirre,
    912 F.2d 555 (2d Cir. 1990) ................................................................................. 14

United States v. Alessi,
    638 F.2d 466 (2d Cir. 1980) ................................................................................. 14

United States v. Baudanza, et al.,
    06-CR-181 (E.D.N.Y.) ......................................................................................... 2

United States v. Fatico,
    603 F.2d 1053 (2d Cir. 1979) ............................................................................... 13

United States v. Gunn,
    419F. App'x 106, 109 (2d Cir. 2011) ............................................................... 15, 16

United States v. Jones,
    482 F.3d 60 (2d Cir. 2006) .................................................................................. 13

United States v. Kirsh,
    54 F.3d 1062 (2d Cir. 1995) ................................................................................ 19

United States v. Lee,
    818 F.2d 1052 (2d Cir. 1987) .............................................................................. 17

United States v. Noble,
    363 F. App'x 771 (2d Cir. 2010) .......................................................................... 14

United States v. Palmaccio,
    812 F. App'x 16 (2d Cir. 2020) ............................................................ 1, 4, 12, 19, 20

United States v. Santiago,
    330 F. App'x 234 (2d Cir. 2009) ..................................................................... 17, 18

United States v. Williams,
    65 F.3d 301 (2d Cir. 1995) .................................................................................. 22

Wilson v. McGinnis,
    413 F.3d 196 (2d Cir. 2005) ................................................................................ 21

<u>Yick Man Mui v. United States,</u>
   614 F.3d 50 (2d Cir. 2010) ........................................................................................ 13

**<u>Statutes</u>**

18 U.S.C. 2255 ..................................................................................................... 1, 13

18 U.S.C. § 3553(a) ................................................................................................. 8

**<u>United States Sentencing Guidelines</u>**

U.S.S.G. § 5K2.0 ..................................................................................................... 6

<u>PRELIMINARY STATEMENT</u>

An acting captain in the Bonanno organized crime family of La Cosa Nostra, the defendant, Ronald Giallanzo (the "defendant") committed multiple acts of loansharking, illegal gambling, and arson.  He was convicted in September 2018 following a guilty plea to one count of racketeering conspiracy, in violation of Title 18, United States Code, Section 1962(d), and sentenced to a term of imprisonment of 144 months.  Because he was on supervised release in connection with a previous racketeering conviction at the time he committed the instant racketeering offense, the defendant also pled guilty to violating the terms of his supervision, for which he was sentenced to a term of imprisonment of 24 months to run consecutively to his 144-month sentence.  On appeal, the Second Circuit affirmed both his conviction and sentence.  <u>United States v. Palmaccio</u>, 812 F. App'x 16, 20 (2d Cir. 2020) (summary order).

The defendant now seeks to vacate his conviction under 18 U.S.C. 2255 on the basis that (1) he was deprived due process and effective assistance of counsel when he agreed to plead guilty and was sentenced to a term of imprisonment above the advisory United States Sentencing Guidelines; (2) he was denied effective assistance of counsel when he waived his right to a <u>Fatico</u> hearing; and (3) he was denied effective assistance of counsel when his attorney failed to make certain objections during his sentencing.  (ECF No. 578, Memorandum of Law in Support of Petitioner's Motion to Vacate Conviction Under 28 U.S.C. § 2255) ("Def. Mot.")).  For the reasons described below, the Court should deny the defendant's motion in its entirety.

I.     THE DEFENDANT'S OFFENSES, SENTENCING AND PROCEDURAL
       BACKGROUND

       A.     The Defendant's Prior Criminal Conduct

       The defendant, at the time of his indictment and arrest in March 2017, was an

acting captain of the Bonanno crime family.  (See Presentence Investigative Report ("PSR")

¶ 19).  By then, he had been an inducted member of the Bonanno crime family for over two

decades.  (PSR ¶ 19).

       Beginning in the early 2000s, as part of his association with both the Bonanno

and Colombo organized crime families, the defendant committed several stock-fraud

schemes and related extortions of stockbrokers.  (PSR ¶¶ 19, 263, 293).  He was arrested and

charged in the Eastern District of New York in 2006 with racketeering and related offenses

(the "2006 Case").  (PSR ¶¶ 19, 263, 293; United States v. Baudanza, et al., 06-CR-181

(E.D.N.Y.), ECF No. 1).  The following year, he pleaded guilty to racketeering conspiracy

and two counts of extortion conspiracy and was sentenced to a term of imprisonment of 87

months and three years of supervised release.  (PSR ¶ 293; 06-CR-181, ECF No. 345).  The

defendant completed the custodial term of his sentence and was released to a halfway house

in 2013.  (PSR ¶ 51).

       B.     The Defendant's Initial Violation of Supervised Release

       The defendant repeatedly violated the terms of his supervised release.  In

particular, he attended multiple meetings of high-level members of the Bonanno crime

family in violation of the condition of release barring him from associating with members of

organized crime groups engaged in criminal activity.  (PSR ¶¶ 21-22; 06-CR-181, ECF No.

457).  On March 18, 2016, the Honorable Nicholas G. Garaufis sentenced the defendant to

2

one year and one day in prison for these violations, resulting in Giallanzo's incarceration from January 2016 to December 2016.  (PSR ¶¶ 21-22; 06-CR-181, ECF Nos. 456-57).

       C.    <u>The Defendant's Instant Offense</u>

       The charges in the instant case (the "2017 Case") arose from the defendant's years-long involvement in a wide range of criminal conduct, often violent, on behalf of the Bonanno crime family, including arson, loansharking, and illegal gambling.

       For well over a decade, the defendant extorted numerous victims.  In one example, between March 2011 and May 2013, the defendant and others violently extorted John Doe #14, who at one point owed the defendant $250,000, and who paid the defendant's brother-in-law approximately $2,000 in weekly interest payments that did not reduce the principal owed.  (PSR ¶ 51).  Soon after the defendant was released from prison on the 2006 Case, when John Doe #14 was unable to make his weekly interest payments, the defendant smacked John Doe #14 to the ground, and the defendant and his associate dragged the victim to the associate's vehicle, beating John Doe #14 until he soiled himself.  During the assault, the defendant screamed, "Where's the fucking money?"  (PSR ¶ 51).

       The defendant's crimes were not limited to loansharking.  For instance, in June 2006, the defendant authorized an associate to set fire to the vehicle of an individual whose child had had a dispute with another associate's child.  (PSR ¶ 41).  Similarly, in October 2006, the defendant directed an associate to burn the vehicle of the father-in-law of another Bonanno crime family associate whom the defendant suspected might cooperate with law enforcement against the defendant in the 2006 Case.  (PSR ¶ 42).  The defendant also operated an illegal gambling business from 2005 to 2006 (PSR ¶ 38) and again, following his release from prison, from 2013 to 2016.  (PSR ¶ 71).  In 2005, the defendant participated in a

wire fraud scheme to improperly obtain insurance proceeds from the destruction of a boat. (PSR ¶ 40).

      D.    <u>The Defendant's Guilty Plea</u>

      On or about March 8, 2018, the government met with the defendant and his counsel to discuss a resolution of the 2017 Case.  According to counsel for the defendant, Ms. Elizabeth Macedonio, Esq., throughout plea negotiations, the defendant was "willing to explore the possibility of resolving the case through a negotiated plea."  (Macedonio Affidavit dated January 17, 2022 ("Macedonio Aff."), attached hereto as Exhibit A, at ¶ 2). The government made no promise as to where the defendant would be incarcerated should he enter into a plea agreement, nor did the government meet with the defendant without counsel present.  (<u>Id.</u> at ¶ 3).

      On March 19, 2018, the defendant pleaded guilty to racketeering conspiracy, as charged in Count One of the Superseding Indictment.  (ECF No. 171; Minute Entry dated March 19, 2018).  As part of his agreement, the defendant admitted his involvement in five separate extortion schemes, each charged as a separate racketeering act and each involving a different victim.  (ECF No. 359 at 3-5).

      At the time of the defendant's plea, the government estimated that the applicable United States Sentencing Guidelines (the "Guidelines") range would be 78 to 97 months' imprisonment, based on a total adjusted offense level of 26 and a criminal history category of III.  (<u>Id.</u> at 2).  The defendant stipulated to the Guidelines estimate, which included a four-level enhancement for his leadership role, a one-level enhancement because the Guidelines did not account for all of his victims, and a one-level reduction for the global resolution secured through the guilty pleas of multiple defendants.  (ECF No. 577-1,

Giallanzo Plea Agreement ("Guilty Plea") at 4.  The agreement provided that the government would "advise the Court and the Probation Department of information relevant to sentencing, including criminal activity engaged in by the defendant," and that such information could be "used by the Court in determining the defendant's sentence."  (Guilty Plea at 2-3).  The government agreed that it would not move for an upward departure under the Sentencing Guidelines but in no way limited its ability to advocate for a particular sentence within the Guidelines range.  (Guilty Plea at 8).  The agreement also provided that the estimated Guidelines range was "not binding on the Office, the Probation Department or the Court."  (Guilty Plea at 4).  In addition to the applicable Guidelines, the agreement set forth the statutory maximum sentence for the charge to which the defendant was pleading guilty.  (Guilty Plea at 2).

In providing the factual basis for his plea, the defendant admitted that he was part of the enterprise "charged in Count One of the Indictment," i.e., the Bonanno crime family, from 1998 to 2017.  (Guilty Plea Transcript ("Guilty Plea Tr."), attached hereto as Exhibit B, at 46).  The defendant admitted further that as part of his association with the enterprise he was guilty of the five racketeering acts of loansharking specified in the plea agreement and admitted that each of these crimes involved an "implied threat that if the money was not paid, harm would come to that person through violence or other criminal means."  (Guilty Plea Tr. at 47-49).

On June 7, 2018, the defendant pleaded guilty to one charge of violating his conditions of supervised release, acknowledging that his criminal conduct at the center of the 2017 Case violated the release conditions imposed in connection with the 2006 case.  (06-CR-181, Minute Entry dated June 7, 2018).

E.    The Defendant's Sentencing

On August 15, 2018, the defendant was sentenced for both the racketeering conspiracy charged in the Superseding Indictment and his violation of his conditions of supervised release.  (Minute Entry dated August 15, 2018).

Before calculating the applicable Guidelines range, the Court addressed the defendant's various objections to the PSR, including the inclusion of criminal conduct that the defendant had not admitted to during his guilty plea but that the government maintained it could prove by a preponderance of the evidence.  (ECF No. 577-8 ("Sentencing Tr.") at 15-19).  As the Court explained: "Either we have a Fatico hearing and it is proven, or the defendant withdraws his objection to it . . . ."  (Id. at 17).  After conferring with the defendant, his counsel stated, "[T]o the extent that we have objected to issues that the Government claims it can prove by a preponderance of the evidence, we are now withdrawing those objections."  (Id. at 19).  The Court clarified with the defendant himself that he had no further objection to the PSR as amended.  (Id. at 23) (Court: "And do you have any further objection to the PSR as amended?  Defendant: No, Your Honor.")  Based on the facts set forth in the PSR, which the Court adopted as amended, the Court calculated a Guidelines range of 78 to 97 months' imprisonment, which the Court then reduced to a final adopted range of 70 to 87 months' imprisonment after granting a one-level downward departure pursuant to U.S.S.G. § 5K2.0 based on the global plea referenced in the plea agreement.  (Id. at 20-21; Guilty Plea at 4).

Before granting the downward departure, the Court requested a "point of clarification" from the Probation Department and asked to confirm that the Guidelines estimate in the PSR did not take the proposed downward departure into account.  (Sentencing

Tr. at 20).  The Probation Department confirmed the Court's understanding.  (Id.)  The government subsequently sought to clarify that the Probation Department had identified bases for both upward and downward departure in the PSR – for a downward departure based on the global plea, as discussed by the Court, and for an upward departure based on criminal conduct not captured by the applicable Guidelines range.  (PSR ¶¶ 358-59; id. at 21-23).  In this context, and before its argument in support of the requested sentence, the government noted "one thing [it] would like to clarify" in the Court's discussion of possible departures, observing that although the defendant had agreed in his plea agreement to a one-point offense-level enhancement for underrepresented victims, the Probation Department "was indicating to the Court generally that it could take those [crimes] into consideration as a basis for an upward departure from the guidelines range" rather than just as an increase in the guidelines range itself.  (Id. at 21-22).

Αt no point did the government move or advocate for an upward departure. To the contrary, the government explicitly, and repeatedly, requested that the Court "impose a sentence at the top of the guidelines with 24 months on the violation of supervised release to run . . . consecutive[ly]."  (Id. at 30).  At one point during the sentencing, the Court asked the government directly whether it was "requesting a sentence at the high-end of the guideline range as calculated by the Court," to which the government responded, "Yes, Your Honor."  (Id. at 31).  In support of its recommendation, the government argued that the sentencing factors set forth in 18 U.S.C. § 3553(a), as applied to the facts set forth in the PSR and found by the Court, warranted "a very substantial sentence."  (Sentencing Tr. at 24).

Regarding the seriousness of the offense, the government noted that the defendant "allocuted to extorting five separate loanshark victims" and had also participated

7

in a physical assault of one victim while on supervised release.  (Id.)  With respect to the defendant's history and characteristics, the government summarized the defendant's decades-long involvement in a wide range of criminal activity, including his rise through the ranks of the Bonanno crime family since his induction more than 20 years earlier and his continued criminal activity both from behind bars during his sentence on the 2006 Case and while on supervised release, during which periods he actively continued to manage his loansharking and illegal gambling operations.  (Id. at 24-27).  The government also referenced the defendant's involvement in criminal conduct beyond the specific acts he admitted to during his plea allocution that the Court was permitted to consider in fashioning an appropriate sentence.  (Id. at 25-26).  Reflecting upon the defendant's stipulation to a one-point enhancement for underrepresented victims, the government noted, for example, that there were "other loanshark[ing] victims out there" beyond those referenced in the plea agreement. (Id. at 26).  As to the defendant's prior violations of supervised release, the government argued that the defendant had previously received a lenient sentence from Judge Garaufis for his repeated associations with members of the Bonanno crime family.  The government added that "Judge Garaufis so much as said that he got [Giallanzo's] sentence wrong," paraphrasing Judge Garaufis's public remarks during a conference with fellow Bonanno crime family member Anthony Pipitone, whom Judge Garaufis ultimately sentenced to the maximum two years' imprisonment for violations similar to those for which Giallanzo received a sentence of a year and a day.  (Sentencing Tr. at 27).

The government also observed that specific deterrence counseled in favor of the requested sentence at the top of the Guidelines range because the defendant was "sentenced to 87 months [in the 2006 Case], which is the top of the Guidelines range," and

was not deterred from committing further crimes by virtue of that sentence.  (Id. at 28).

Finally, the government requested that the Court impose a sentence sufficient to send a

message of general deterrence that "this is not a path that they want to take."  (Id. at 28-29).

Counsel for the defendant, Ms. Macedonio, argued in favor of a sentence at the

low end of the Guidelines range because the plea agreement reflected an "extraordinary"

acceptance of responsibility," based on the defendant's allocution and agreement to sell his

home, prompting the Court to explain that its interpretation of "extraordinary" acceptance of

responsibility involved successful cooperation with the government.  (Id. at 30-32).  The

Court explained that Giallanzo's agreement to sell his home merely required that he

"[r]egurgitat[e] ill-gotten goods" that the government "could have gone after . . . in a

forfeiture proceeding," as it had begun to do.  (Id. at 33).

Next, Ms. Macedonio urged the Court to "consider who some of the victims

are in this case" because there were some victims who themselves engaged in criminal

activity and thus were not "unwitting participants in these crimes."  (Id. at 32-33).  The Court

analogized the argument to a claim that "the drug dealer who robs another drug dealer should

not be punished so harshly because, after all, he is just robbing a drug dealer" but

nevertheless recognized that some of Giallanzo's victims "may have been loansharking

themselves."  (Id. at 33-34).  The Court did not place much weight on the argument,

observing, among other things, the defendant's approval of his associate's burning of an

innocent victim's car on behalf of a co-defendant because the car owner's child had had a dispute with one of another associate's daughter.  (Sentencing Tr. at 35; PSR ¶ 41).[1]

Mr. Charles Carnesi, a second attorney[2] for the defendant also advocated on his behalf, arguing that the Court should consider the defendant's work at the recovery site at Ground Zero after the 9/11 attacks, a point the government had argued deserved little mitigating weight.  (Id. at 41-42).  The second attorney for the defendant also pointed to the defendant's health concerns and his relationship with his family, including his attempt to take responsibility for another's misdeeds, as mitigating factors warranting consideration by the court.  (Id. at 42-43).  Finally, the defendant read a prepared statement in which he expressed his remorse to the Court.  (Id. at 44-46).

After hearing from the parties, the Court detailed the reasons for its sentence. The Court began by stating that sentencing is "the most difficult decision that any judge has to make" and proceeded to explain how it "starts first with the guidelines, even though they are advisory."  (Id. at 50).  Observing that the defendant had "pointed to certain factors" in support of an argument for a downward departure, the Court stated that it must also consider "the 3553(a) factors" and went on to define each of them.  (Id. at 50-52).  Recognizing the parsimony clause of the statute, the Court stated that its sentence must "not be greater than necessary to achieve the goals of sentencing."  (Id. at 51).

---

[1]  When the Court mistakenly stated that it was the defendant's daughter that was the genesis of the dispute, defense counsel immediately corrected the error.  (Id. at 35).

[2]  The government is advised that Mr. Charles Carnesi, Esq., counsel to the defendant, died in 2019.

The Court then addressed the Section 3553(a) factors in more detail.  With respect to the seriousness of the offense, the court recognized that the offenses were "very serious" and "covered a very long period of time."  (Sentencing Tr. at 52).  The Court also noted that the defendant's offenses "prey[ed] on the weaknesses of people who have gambling addictions" who require loansharks to pay off those debts.  (Id. at 52-53).  The Court also stated that the defendant's crimes involved "threats of violence," and "pretty nasty acts of violence," including the assault on John Doe #14, who was "slapped down in a deli, being dragged out and beaten in a vehicle.  And then beaten again when they lied to you."  (Id. at 53-54).

With respect to the defendant's history and characteristics, the Court noted his family's adulation and his respectful demeanor in court.  (Id. at 53-54, 57) (observing the effect of the sentence on his family)).  The Court also recognized that the defendant's work after 9/11 was "very serious work" and stated that the Court did "not mean to minimize that" but, rather, had focused in part on the fact that he committed additional crimes ("bad stuff") thereafter.  (Id. at 54-55).

As to deterrence, the Court observed that the 2006 Case should have caused "the awakening and the reckoning" necessary to move the defendant away from his life of crime but that instead "what happened was the total opposite."  (Id. at 56).  The Court stated that "while [Giallanzo was] in custody, even while under a sentence for a violation of supervised release, [he] still manag[ed his] cohorts [which] just speaks to the fact that [he] never once skipped a beat."  (Id.)  The Court noted that after the 2006 Case, the defendant rose through the ranks of the Bonanno crime family to become an acting captain, even "prey[ing] on family," i.e., his brother-in-law, to "suck[] him in."  (Id. at 57).  Addressing the

11

defendant, the Court stated, "I don't know whether you can get away from this, Mr. Giallanzo.  I think it is ingrained in who you are, sadly."  (Sentencing Tr. at 58).  In addition, the Court recognized the profound impact of the defendant's crimes on his community in Howard Beach, Queens.  (Id. at 57-58).

Before imposing sentence, the Court observed that, in light of "everything that ha[d] been presented to [the Court], all of the facts and circumstances here, a sentence, certainly a sentence below the guidelines [was] not appropriate and a sentence at the low end of the guidelines [which the defendant had requested] [was] not appropriate either."  (Id. at 58).  The Court imposed a sentence of 144 months' imprisonment, reflecting a variance above the Guidelines range, plus a consecutive term of 24 months' imprisonment on the related violation of supervised release.  (Id. at 58-59).  After ordering restitution, the Court provided further detail as to why it varied upwardly from the Guidelines' suggested range of 12 to 18 months' imprisonment on the violation.  Specifically, the Court explained that "[a] violation of supervised release is a violation of the trust of the Court" and that the defendant "had violated the trust of the Court already once before and had not learned his lesson from that, and violated the trust of the Court yet again while on supervision . . . ."  (Id. at 66).  The Court stated that, based on his repeated violation of the Court's trust, "the maximum statutory sentence allowed by law [was] appropriate under the circumstances."  (Id. at 66-67).

F.    The Defendant's Appeal

The Second Circuit affirmed the judgment of the Court on appeal.  Palmaccio, 812 F. App'x at 21.  In particular, the Circuit rejected the defendant's argument that the

government somehow breached the defendant's plea agreement by allegedly inviting the district court to impose an above-guidelines sentence.  (Id. at 19).

II.     THE DEFENDANT'S REQUEST FOR RELIEF SHOULD BE DENIED

The defendant now seeks relief under Section 2255 on the basis that (1) he was deprived of effective assistance of counsel when his former attorney failed to make certain objections at sentencing and waived a hearing pursuant to United States v. Fatico, 603 F.2d 1053 (2d Cir. 1979) and (2) he was deprived of his right to due process and effective assistance of counsel during plea negotiations.  Because his claims fail to satisfy the standard for relief, his motion should be denied.

A.      Applicable Law

1.      Section 2255

As an initial matter, federal habeas review is not a substitute for direct appeal. See Bousley v. United States, 523 U.S. 614, 621 (1998).  A federal defendant who fails to assert a claim in proceedings before the district court or on direct appeal procedurally defaults on that claim and may only raise the claim pursuant to a Section 2255 motion if he shows either cause and prejudice or that he is actually innocent.  See DeJesus v. United States, 161 F.3d 99, 102 (2d Cir. 1998); Stinn v. United States, 856 F. Supp. 2d 531, 538 (E.D.N.Y. 2012) (Gershon, J.).

2.      Standard of Review for Ineffective Assistance Claims

A petitioner may bring an ineffective assistance of counsel claim whether or not the petitioner could have raised the claim on direct appeal.  Yick Man Mui v. United States, 614 F.3d 50, 54 (2d Cir. 2010).  To "prevail on an ineffective-assistance-of-counsel claim, a defendant must show (1) that his attorney's performance fell below an objective

13

standard of reasonableness, and (2) that as a result he suffered prejudice." United States v. Jones, 482 F.3d 60, 76 (2d Cir. 2006) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).  The two-prong Strickland standard is "highly demanding." Kimmelman v. Morrison, 477 U.S. 365, 382 (1986).

In assessing the reasonableness of counsel's performance, judicial scrutiny "must be highly deferential" and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances," Kimmelman, 477 U.S. at 381, "bearing in mind that there are countless ways to provide effective assistance in any given case and that even the best criminal defense attorneys would not defend a particular client in the same way." United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (internal quotation marks and brackets omitted).  A defendant is not entitled to a "modern-day Clarence Darrow"; mere competence will suffice. United States v. Alessi, 638 F.2d 466, 477 (2d Cir. 1980).  In addition, because there "are countless ways to provide effective assistance in any given case," Strickland, 466 U.S. at 689, the lack of success of a chosen strategy should not cause a court to second-guess an attorney's judgments, Cuevas v. Henderson, 801 F.2d 586, 590 (2d Cir. 1986).

In order to show prejudice, a petitioner must show a reasonable probability that, but for counsel's defective performance, the result of the proceeding would have been different. See Strickland, 466 U.S. at 694.  Indeed, the "ultimate focus of inquiry" is whether "the result of the particular proceeding is unreliable because of a breakdown in the

14

adversarial process." Id. at 670, 696.  An attorney's "failure to make a meritless argument does not amount to ineffective assistance."  United States v. Noble, 363 F. App'x 771, 773 (2d Cir. Feb. 2, 2010) (summary order) (internal quotation marks omitted).

In deciding an ineffective assistance of counsel claim, a court need not address both prongs of the Strickland inquiry if the defendant makes an insufficient showing on either one.  See Strickland, 466 U.S. at 697; Swerbilov v. United States, No. 04-CV-3320, 2005 WL 1177938, at *3 (E.D.N.Y. May 18, 2005).  In particular, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."  Strickland, 466 U.S. at 697; see also Carneglia v. United States, No. 03-CV-6388, 2006 WL 148908, at *4 (E.D.N.Y. Jan. 18, 2006).

B.    Argument

1.    Defense Counsel's Conduct Was Reasonable and the Defendant Suffered No Prejudice as a Result of the Negotiated Plea

The defendant's argument for relief on the basis that his counsel provided ineffective assistance by promising him a sentence within the stipulated Guidelines range reflected in the plea agreement should be denied.  (Def. Mot. at 4-5).

The record makes clear that the defendant was properly advised of his sentencing exposure.  At his plea hearing, in which Ms. Macedonio was involved, the defendant indicated that he had read the plea agreement, discussed the agreement with counsel and was entering into the agreement knowingly and voluntarily.  (Guilty Plea Tr. at 30-31); United States v. Gunn, 419 F. App'x 106, 109 (2d Cir. 2011) (summary order) (finding petitioner failed to show counsel's assistance was ineffective where record

15

established petitioner had a full opportunity to discuss his case with counsel as well as the

consequences of entering a guilty plea and that defendant was satisfied with counsel's

representation and thus could not overcome heavy burden that plea was involuntary).

Pursuant to the plea agreement, signed by the defendant and his counsel, the

government estimated that the defendant's sentencing range under the Guidelines would be

78-97 months.  (Guilty Plea at 4).  The plea agreement stated that the Guidelines estimate set

forth was not binding on the government, the Probation Department or the Court.  (Id.)  The

plea agreement also set forth the statutory minimum and maximum penalties applicable to

the charge to which the defendant was pleading guilty.  (Id. at 2)  Under the plea agreement,

the statutory maximum sentence set forth was 20 years.  (Id.)  Counsel to the defendant

acknowledged having advised the defendant of the maximum sentence that could be imposed

on the charge to which the defendant pled at the plea hearing.  (Guilty Plea Tr. at 12).

Counsel further acknowledged having discussed with the defendant the operation of the

advisory sentencing guidelines.  (Id.)[3]

In addition, at the plea hearing, the Court in particular raised sentencing with

the defendant, noting the "advisory" nature of the Guidelines and that the Court would

consider "whether there are departures that are appropriate within the guidelines, which

might be above the guideline range or below the guideline range."  (Id. at 35).  The defendant

---

[3]  In contrast to the defendant's allegations that "his attorney told him [he would not receive an above-guidelines sentence]" (Def. Mot. at 4), Ms. Macedonio affirmed that during plea negotiations, she discussed with the defendant the application of the sentencing guidelines to the defendant's case, but at no time did she promise the defendant what his sentence would be.  (Macedonio Aff. at 4).

acknowledged his understanding. (Id. at 36). Notably, here, the record reflects that the Court specifically informed the defendant that in connection with the count to which he was pleading guilty, there was a "maximum term of imprisonment of 20 years, or 240 months." (Id. at 37). The Court went on to explain that the Court would also be imposing a term of supervised release and that the defendant could be subject to additional jail time of up to two years. (Id. at 37-38). Again, the defendant confirmed his understanding. (Id. at 38).

Thus, the record makes clear that even had the defendant been erroneously advised by counsel as to the potential sentence he would receive, there is no resulting prejudice. The defendant was explicitly advised on the record by the Court of his sentencing exposure as well as the Court's ability to depart from the applicable advisory Guidelines. (Id. at 35-38). Berry v. Ercole, 391 F. App'x 87 (2d Cir. Aug. 30, 2010) (summary order) (affirming district court's denial of habeas relief where movant was advised and acknowledged on the record that he could receive a higher sentence than the plea agreement set forth). Therefore, his decision to plead was not prejudiced by the advice of counsel. As a result, his claim for relief should be denied.

2.   Defense Counsel's Strategic Decision To Decline To Pursue A Fatico Hearing Was Reasonable

The defendant's argument that his counsel's strategic waiver of a Fatico hearing resulted in ineffective assistance likewise fails. (Def. Mot. at 17-19).

Counsel may decide to forego a Fatico hearing as a "matter of strategy." United States v. Lee, 818 F.2d 1052, 1056 (2d Cir. 1987). Under Strickland, courts "presume[s] such a strategy is sound absent a strong showing to the contrary." United States v. Santiago, 330 F. App'x 234, 239 (2d Cir. 2009); Strickland, 466 U.S. at 689.

The defendant fails to make such a showing here.  In contrast, as set forth in counsel's affidavit, counsel advised the defendant not to pursue a <u>Fatico</u> hearing "based upon our review of the evidence and the government's representations that it had witnesses available to establish the allegations by a preponderance of the evidence."  (Macedonio Aff. at 6).  Counsel "believed that a <u>Fatico</u> hearing would have exposed [the defendant] to an increased sentence if the Court were to hear detailed evidence about the allegations, many of which were violent."  (<u>Id.</u>); <u>Santiago</u>, 330 F. App'x at 239 (finding no ineffective assistance where district court noted "it was indeed wise for [the defendant] to avoid a <u>Fatico</u> hearing at which his prior violent conduct would have been reviewed in detail for the benefit of the district court") (internal citations omitted); <u>Greiner v. Wells</u>, 417 F.3d 305, 319 (2d Cir. 2005) ("We will not normally fault counsel for foregoing a potentially fruitful course of conduct if that choice also entails a significant potential downside.").  Moreover, at sentencing, the Court independently clarified with the defendant himself whether he understood the discussion and whether he had any further objection to the PSR as amended. The defendant did not.  (<u>Id.</u> at 23.)  Because defense counsel made a sound strategic decision to forego a <u>Fatico</u> hearing here, the defendant's argument for relief on this basis should be rejected.

        3.    <u>Defense Counsel's Strategic Decision Not To Object At Sentencing Was Reasonable</u>

The defendant's argument that he was denied effective assistance where defense counsel did not object to the government's advocacy at sentencing is similarly meritless and should be denied.  (Def. Mot. at 20).

The record is clear that the government did not move for an upward departure at sentencing.  Rather, the government repeatedly and explicitly advocated for a sentence at the top of the Guidelines range, as it was empowered to do under the plea agreement. (Guilty Plea at 2-5; Sentencing Tr. at 24, 31).

On direct appeal, the defendant did not argue, and in fact conceded, this point. The Circuit thus applied a plain error standard of review and rejected the defendant's argument that the government breached the plea agreement.  Palmaccio, 812 F. App'x at 20 ("The record demonstrates that the government's advocacy at sentencing, while strident, was made in support of a sentence at the top of the Guidelines range, as permitted under the plea agreement.").

An attorney's "failure to make a meritless argument does not amount to ineffective assistance."  United States v. Kirsh, 54 F.3d 1062, 1071 (2d Cir. 1995).  Because the government was acting in accordance with the terms of the plea agreement, the defendant cannot meet the burden of showing ineffective assistance here on the basis of counsel's strategic decision not to object at sentencing.

Moreover, the record establishes that, at sentencing, counsel for the defendant advocated competently on his behalf.  (Sentencing Tr. at 30-32).  Beyond Ms. Macedonio, a second attorney for the defendant also advocated on his behalf.  (Id. at 41-43).  Finally, the defendant read a prepared statement in which he expressed his remorse to the Court.  (Id. at 44-46).  The Court set forth in detail the grounds for the sentence imposed, noting that in light of "everything that ha[d] been presented to [the court], all of the facts and circumstances here, a sentence, certainly a sentence below the guidelines [was] not appropriate and a sentence at the low end of the guidelines [which Giallanzo had requested]

19

[was] not appropriate either."  (Id. at 58).  The purported deficiency identified by the defendant thus fails to satisfy the standard for relief under Strickland and relief on this basis should be denied.

4.      The Defendant's Claim That His Plea Violates Due Process Is Procedurally Barred and Meritless

The defendant's argument that he was denied due process in light of alleged promises by the government as to where he would be incarcerated is both procedurally barred and without merit.  (Def. Mot. at 4).

Under Section 2255, where a criminal defendant did not raise an argument on direct appeal, he is procedurally barred from doing so on a collateral challenge under Section 2255.  Curtis v. United States, No. 06-CR-00413 (DLI), 2021 WL 4340947, at *1 (E.D.N.Y. Sept. 23, 2021); Rajaratnam v. United States, 736 F. App'x 279, 281 (2d Cir. 2018) (summary order).  "An exception applies ... if the [criminal] defendant demonstrates either (1) cause for the procedural default and ensuing prejudice, or (2) actual innocence." Cox v. United States, 783 F.3d 145, 150 (2d Cir. 2015).

On direct appeal, the defendant did not raise a violation of due process claim. (United States v. Palmaccio, Docket No. 18-2768, ECF No. 75).  In the instant motion, he does not allege any applicable exception for his default, nor does he allege actual innocence. As a result, he is procedurally barred from raising an alleged violation of due process now.

Even if the claim were not procedurally barred, it fails on the merits.  Nowhere in the plea agreement is a promise expressed as to where the defendant would be incarcerated.  Indeed, explicitly, the defendant denied on the record that any external promises were made to induce his plea.  (Guilty Plea Tr. at 45-46) (Court: "Other than the

20

promises that are contained in the written plea agreement, has anyone made any other promises to you to get you to plead guilty?  Defendant: No, Your Honor.").

   The Court's careful clarification on the record that the defendant's plea was knowing, voluntary and not the result of external promises, prior to accepting the defendant's plea undermines the defendant's claim for relief.  (Guilty Plea Tr. at 30); Kercheval v. United States, 274 U.S. 220, 223 (1927) ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.  When one so pleads he may be held bound.").

   The record belies any argument that the defendant's plea was unknowing or involuntary.  The defendant affirmed that the written plea agreement "accurately represented the entire understanding or agreement" that he had reached with the government.  (Guilty Plea Tr. at 32).  He further affirmed on the record that he was entering the plea agreement "knowingly and voluntarily."  (Id. at 30).  He attested under oath that he had signed the plea agreement after having read it, discussed it with his attorney, and understood all of its terms. (Id. at 30) (Court: "'I have read the entire agreement and discussed it with my attorney.  I understand all of its terms and am entering into it knowingly and voluntarily.'  On the left side right below that, Mr. Giallanzo, is that your signature?  Defendant: Yes, it is, Your Honor.").  Counsel for the defendant and the government similarly attested that the written agreement reflected the entirety of the agreement between the parties.  (Id. at 32); Wilson v. McGinnis, 413 F.3d 196, 199 (2d Cir. 2005) ("A plea of guilty is considered voluntary and intelligent if the defendant enters the plea with full awareness of its 'direct consequences.'"); Oyague v. Artuz, 393 F.3d 99, (2d Cir. 2004) (affirming district court's denial of habeas

relief where movant's claims that plea was not voluntary, knowing and intelligent was belied

by express representations on the record).[4]  The defendant's claim for relief thus fails.

<u>CONCLUSION</u>

For the reasons set forth above, the defendant's motion should be denied in its

entirety.

Dated:     Brooklyn, New York
           February 17, 2022

Respectfully submitted,

BREON PEACE
UNITED STATES ATTORNEY
Eastern District of New York
Attorney for Plaintiff
271 Cadman Plaza East
Brooklyn, New York 11201

By:     <u>/s/ *Margaret Schierberl*          </u>
        Margaret Schierberl
        Assistant United States Attorney
        (718) 254-6187

---

[4] The Court need not reach the defendant's allegation that the government somehow promised that it could control where the defendant would be housed during his period of incarceration.  <u>Cf.</u> (Def. Mot. at 4 ("[T]he prosecutor told him that 'if you take the plea, I'll keep you in the region.'") <u>with</u> Macedonio Aff. at ¶ 3 ("The prosecutor stated that if Mr. Giallanzo accepted the offer, she would use her best efforts to ensure that Mr. Giallanzo would be placed in a facility in or close to the New York area.").)  The defendant himself concedes that placement is not within the government nor the sentencing court's power. (Def. Mot. at 12).  This was also made clear on the record at the defendant's sentencing hearing.  (Sentencing Tr. at 68: Court: "I will make those recommendations with the understanding, Mr. Giallanzo, that ultimately where you are housed is entirely up to the Bureau of Prisons.").  <u>United States v. Williams</u>, 65 F.3d 301, 307 (2d Cir. 1995) ("Sentencing court has no authority to order that a convicted defendant be confined to a particular facility, …; those decisions are within the sole discretion of the Bureau of Prisons").

22